Matthias, J.,
 

 dissenting. The record in case No. 31498 discloses no facts developed by a so-called investigation, or otherwise, which would warrant the rejection of the nominating petition by the Secretary of State on the ground of failure to comply with the requirements of Section 4785-100a or for any reason based upon the provisions of that section.
 

 I, therefore, concur in the reversal of the finding of the Secretary of State in case No. 31498.
 

 I dissent from the conclusion reached by the majority in case No. 31496 and the issuance of a writ of mandamus requiring the Secretary of State to place on the official presidential ballot of the state of Ohio any of the names contained in the nominating petition as candidates for presidential electors.
 

 I shall attempt to state very briefly the reasons for my dissent.
 

 The method of the election of the president and vice-president of the United States is prescribed by the provisions of Section 1 of Article II of the Constitution of the United States and the 12th Amendment thereof. The pertinent provisions of the Constitution are as follows:
 

 ‘ ‘
 
 The executive power shall be vested in a president of the United States of America. He shall hold his office during the term of four years, and, together with the vice-president, chosen for the same term, be elected, as follows:
 

 “Each state shall appoint, in such manner as the legislature thereof may direct, a number of electors, equal to the whole number of senators and representa
 
 *150
 
 tives to which the state may be entitled in the Congress; * * * } j
 

 It is thus very specifically provided that the electors, to which each state is entitled, shall be selected in the manner in which the legislature of the state directs. That language is clear and unambiguous. It requires no interpretation or clarification. The power to determine the manner of the selection of the electors is thus conferred upon the legislatures of the several states.
 

 We are, therefore, concerned here only with the question of the manner in which the Legislature of Ohio has directed that the presidential electors, to which this state is entitled, shall be selected. The only provision wherein the Legislature of this state has directed the manner of the selection of the presidential electors is found in Section 4785-74, General Code, and is as follows:
 

 "At each such state convention of each political party persons shall be nominated as candidates for election as presidential electors to be voted for at the nest succeeding general election, and the state platform of such party for such year shall be formulated.
 

 "Within five days after the holding of each such convention the chairman and secretary thereof shall certify in writing to the Secretary of State the names of all persons nominated at such convention as candidates for election as presidential electors.”
 

 The majority of the court adopted the premise that electors are state officers, and, therefore, may be nominated in the manner prescribed for the nomination of independent candidates for other state offices, and applying a so-called liberal rule of construction arrived at the conclusion that presidential electors may therefore be nominated by petition.
 

 The principle of statutory construction is elementary that a specific statutory provision prevails over a conflicting or inconsistent general provision. It fol
 
 *151
 
 lows that a general provision as to the manner of nominating candidates for public office cannot prevail over the specific provisions governing the nomination of candidates for presidential electors.
 

 Assuming that the persons named in the petitions in question may thus be nominated as presidential electors there is absolutely no statutory provision requiring the placing of their names on the ballot. Section 4785-131 provides as follows:
 

 “In marking a presidential ballot the voter shall observe the following rules:
 

 “4a. He shall either place ‘X’ in the blank rectangular space at the left of the space in which are printed the names of the candidates for the offices of president and vice-president for whom he desires to vote, or place ‘X’ in the circular space above such names. Such ballot will be considered and counted as a vote for each of the candidates for election as presidential elector who were nominated as such at the state convention of the same political party as the political party at whose national convention the persons were nominated as candidates for the offices of president and vice-president at the left of, or above, whose names on the presidential ballot the voter placed ‘X,’ and whose nominations as candidates for presidential elector were certified to the Secretary of State as required by Section 4785-74 of the General Code.”
 

 Section 4785-107 provides as follows:
 

 “On the presidential ballot shall be printed the names of the candidates for election to the offices of president and vice-president of the United States, nominated as such by the national conventions of those political parties to which delegates and alternates were elected at the next preceding primary election.”
 

 “Political party” is defined by Section 4785-61. No one would claim the group sponsoring the nomination
 
 *152
 
 petition involved herein conld come within snch definition.
 

 It is perfectly clear that there is now no statutory provision in this state requiring or authorizing the names of any presidential-elector candidates to be placed upon the ballot and it is conceded by the majority that since it does not appear that Henry A. Wallace has been nominated for election to the office of president of the United States and Glen H. Taylor has been nominated to the office of vice-president of the United States “by the national conventions of those political parties to which delegates and alternates were elected at the next preceding primary election,” the provisions of Section 4785-107, General Code, preclude the placing of the names of Henry A. Wallace as a candidate for president and Glen H. Taylor as a candidate for vice-president on the ballot.
 

 We again direct attention to the provision of the federal Constitution that “each state shall appoint, in such manner as the legislature thereof may direct” the number of electors to which the state may be entitled. The Legislature of this state has so directed in language that cannot be misunderstood. It may be argued that the Legislature should have directed otherwise. That is a legislative and not a judicial function. Our question is not what provision should have been enacted by the Legislature. It is only what it did enact and our duty is to interpret such provision if the meaning thereof is uncertain or ambiguous.
 

 The federal Constitution conferred the power of determining the manner of the selection of electors upon the legislatures of the various states and not upon the courts. It is not the function of the courts to legislate, to determine questions of political policy or to decide questions submitted to them on the basis of expediency or of personal preference, wish or
 
 *153
 
 desire. Neither the wisdom, propriety or expediency of statutes is a matter for the consideration of the courts.
 

 The purposes of government are best served when each branch of the government performs the functions committed to it and usurps none of the powers committed to either of the other branches of the government. If it be argued that the method of election of president and vice-president, as now prescribed by the Constitution, is archaic, antiquated and absurd, or for any reason such method should be altered, let it be done in the manner prescribed by that instrument, just as was done in other instances, for example when it was determined that United States Senators should be elected by direct vote of the people instead of by the legislatures of the various states.
 

 Washington’s admonition is even yet pertinent. He said:
 

 “If, in the opinion of the people; the distribution or modification of the constitutional powers be in any particular wrong, let it be corrected by an amendment in the way which the Constitution designates. But let there be no change by usurpation; for though this, in one instance, may be the instrument of good, it is the customary weapon by which free governments are destroyed.”
 

 In my opinion there is no ground for the contention that any provision of the Ohio statutes involved herein is violative of either the state or federal Constitution.
 

 No principle is better settled or more firmly established in this state than that mandamus is an extraordinary remedy and a writ therefor will not issue unless and until a clear legal right thereto is established by the relator, and it is specifically provided by Section 12283, General Code, that such writ will issue only ■ to command the performance of an act
 
 *154
 
 which the law specially enjoins as a duty resulting from an office, trust or station.
 

 There being, in my opinion, no statute of this state requiring or even authorizing the nomination of candidates for the offices of president and vice-president or for' presidential electors by nominating petitions such as presented by the relator, the writ of mandamus sought in case No. 31496 should be denied.